**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND HANDLING CONCEPTS CORPORATION** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO.  23-145** |
| | : | |
| **INVATA, LLC f/k/a INVATA, INC.** | : | |
| **d/b/a INVATA INTRALOGISTICS** | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                **October 11, 2023**

Here we have the odd situation of a plaintiff that contractually agrees to sue in a particular forum — and then sues in that agreed forum — reversing course and asking for a transfer somewhere else.  Whatever remarkable facts might be required to justify that, they aren't present here.

The dispute is between a warehouse storage company and automation company.  The companies agreed that Pennsylvania state and federal court is the place they would fight if something went wrong.  The agreement broke down.  After a short-lived lawsuit in California, the warehouse company brought this action, and now is trying to get back to California.  But the warehouse company does not meaningfully challenge the forum-selection clause's validity, and it gets significant weight.  And the warehouse company has not carried its burden to establish that public interest factors overwhelmingly favor transfer.  So the case stays.

Since we're keeping the case, we turn to the automation company's motion to dismiss.  Because the causes of action sounding in contract are barred by a one-year limitations provision, and the tort claims are repackaged contract claims, we grant the motion and dismiss the case with prejudice.

I.      **Factual Allegations**

California-based Raymond Handling Concepts specializes in warehouse storage and

design.  DI 1 ¶¶ 1, 4.  In "early 2018," Raymond contracted with another California company,

Taylor Farms, to install storage systems in Taylor Farms' Salinas, California fresh produce

distribution center.  *Id.* ¶¶ 5-6, 15.  The project cost more than $5,000,000.  *Id.* ¶ 5.

Taylor Farms specified the components of the contract.  *See id.* ¶¶ 7, 10.  Raymond had

to install, among other things, new storage racks, a pallet conveyer system, and a "Cold Storage

Skybridge," which would connect different parts of Taylor Farms' distribution center.  *Id.*

¶¶ 5, 7.  Raymond's work would reduce Taylor Farms' "check-in-to-check-out time," labor

costs, and head count.  *Id.* ¶ 7.

Raymond also promised to implement a "Warehouse Execution System FastTrak

Software."  *Id.* ¶ 5.  The FastTrak software would optimize "pallet put-away," "pallet and case

picking," and "rack storage" in the distribution center.  *Id.* ¶ 7.  Invata, Inc., a Pennsylvania-

based automation services company, owned the rights to FastTrak.  *See id.* ¶ 6.

So, Raymond subcontracted with Invata to provide its FastTrak software product.  *Id.*

The subcontract would take effect on September 24, 2018, "commence no later than April 1,

2019," and complete "by April 29, 2019."  *Id.* ¶ 9.  Invata would receive around $3 million in

return for helping implement FastTrak, licensing the software, and providing "[a]nnual system

support."  DI 10 Ex. A at 4; *see also* DI 1 ¶ 7.[1]

---

[1] The citation to Exhibit A of Invata's motion to dismiss — the parties' subcontract —
uses the pagination of the CM/ECF docketing system.  We consider the subcontract even though
Raymond does not attach it to its complaint because it is a "document integral to or explicitly
relied upon" by Raymond.  *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d
Cir. 1997) (internal quotation marks omitted) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d
1194, 1220 (1st Cir. 1996)); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998

Raymond and Invata agreed that Pennsylvania law would govern their subcontract.  DI 10 Ex. A at 6.  Raymond "consent[ed] to the exclusive jurisdiction of the Court of Common Pleas of Montgomery County Pennsylvania and/or the United States District Court for the Eastern District of Pennsylvania."  *Id.*  The parties further agreed that "[a]ny action brought by [Raymond] must be brought within one (1) year after the cause of action arose."  *Id.*[2]

Finalizing the contracts among the parties took some time because of FastTrak.  *See* DI 1 ¶ 11.  The parties revised the FastTrak portion of the general contract as late as December 2018. *See id.*  Taylor Farms eventually approved a "final draft" of the FastTrak part of the agreement on December 31, 2018.  *See id.*

Less than two weeks after Taylor Farms' approval, representatives from Invata told Raymond that they could not install FastTrak by April 2019 — as Invata had originally agreed to do.  *Id.* ¶ 12.  Invata asked Raymond for a two-month extension until June 27, 2019.  *Id.*  A few days after Invata's request, Taylor Farms' representative agreed to the additional time.  *Id.* ¶ 13.

---

F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[2] The agreement specified that Raymond may not bring a claim of "alleged breach of" the subcontract unless

    (i)     it "notifies" Invata "within thirty (30) days from the date of such alleged breach or violation,"

    (ii)    "Invata does not remedy or correct the breach or violation within sixty (60) days from the receipt of [Raymond's] notice,"

    (iii)   it "notifies Invata in writing of such claim with reasonable specificity . . . within one (1) year from date of acceptance, and

    (iv)   it "commences an action to enforce its rights" no "later than forty-five (45) days" after notifying Invata of its claim.

*Id.* at 7.

Deadlines got pushed again.  At some point in 2019, Taylor Farms set August 1, 2019 as the new "Go Live" deadline for FastTrak.  *Id.* ¶ 13.  The August 1 deadline passed, with no FastTrak installed.  *See id.* ¶ 13-14.  Invata later proposed another deadline extension of August 26, 2019, but again, Invata failed to install FastTrak by then.  *See id.* ¶ 14.

As a result, on October 3, 2019, Taylor Farms formally terminated its general contract with Raymond.  *Id.* ¶ 15.  It cited "Invata's repeated delays and ultimate delivery of an inadequate product" as its reasons for doing so.  *Id.* ¶¶ 15-16.  Invata tried addressing Taylor Farms' concerns during an in-person meeting on October 30, 2019, but failed.  *See id.* ¶ 16.

Raymond then sought a "monetary concession from Invata."  *Id.* ¶ 16.  Invata responded to Raymond's demand on January 6, 2020.  *Id.*  From January through June of 2020, all three companies tried working out their contractual issues.  *See id.* ¶¶ 19-20.  Taylor Farms gave Invata a final chance to redevelop its portion of the project by June 2020.  *See id.* ¶ 20.  But Invata failed to submit a redeveloped workplan by June 2020, leading to the current lawsuit.  *See id.*

## II.  <u>Raymond's Motion to Transfer</u>

How this case ended up before us is central to our analysis.  Raymond says that, in November 2021, it sued both Invata and Taylor Farms in California state court.  *See* DI 16 at 2.[3] It sued Taylor Farms for breaching its contract, and Invata for breaching its subcontract.  *Id.*

---

[3] Raymond attaches the complaint from its California state court lawsuit to its motion to transfer.  *Id.* Ex. A.  It requests that we take judicial notice of the state court complaint.  *Id.* Federal Rule of Evidence 201(b) states that "court[s] may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See Ieradi v. Mylan Laboratories, Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000) ("Under Federal Rule of Evidence 201, we may take judicial notice at any stage of the

After filing, the parties tried mediating the dispute rather than litigating.  *Id.*  If mediation

went south, Raymond agreed to "file suit against Invata in Pennsylvania rather than in

California."  *Id.*; *see id.* Ex. B.[4]  Mediation failed, and Raymond filed this suit.[5]

Notwithstanding the agreement, Raymond now moves to transfer venue to the Northern

District of California.  *Id.* at 1.  Raymond argues that "the interests of justice would be better

served by a transfer."  *Id.* at 6 (cleaned up).  Its reasons include: (1) important witnesses are

present in California, and the non-party witnesses cannot be compelled to testify in

Pennsylvania; (2) the claim arose in Salinas, California; (3) it is more convenient for everyone to

litigate in California; and (4) the Northern District of California has an interest in resolving the

dispute.  *See id.* at 6-8.

Raymond provides an additional explanation for requesting a transfer: its hiccups serving

Invata with process.[6]  Apparently, Raymond's process server tried serving Invata at its

_____

proceeding of a fact not subject to reasonable dispute that is capable of accurate and ready
determination by resort to a source whose accuracy cannot be reasonably questioned.").
    We will take judicial notice of Raymond's state court complaint.  We do the same for
purposes of Invata's motion to dismiss because Invata attaches the same document to its motion.
*See* DI 10 Ex. B; *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (holding that
"matters of public record of which the court can take judicial notice" may be considered when
deciding a motion to dismiss based on a statute-of-limitations defense).

    [4] We also take judicial notice of the fact that the parties stipulated to dismissal of
Raymond's California state court lawsuit.  *See In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735,
754 (E.D. Pa. 2014) ("[A] court may take judicial notice of court documents to establish the face
of the litigation or of the filings themselves.").

    [5] Separately, Raymond sued Taylor Farms again in California state court.  *Id.* at 2-3; *see
id.* Ex. C.  For the same reasons described in footnote 2, we take judicial notice of the fact that
Raymond sued Taylor Farms again in California state court in January 2023.  According to
Raymond, its lawsuit is stayed until the pending motions in the present case are resolved.  *See* DI
23.

    [6] Raymond may have mentioned its attempt to serve Invata because of how courts within
the Third Circuit assess motions to transfer filed by *plaintiffs*.  *See Berger v. Grace Line, Inc.*,

Pennsylvania office, but an "Invata representative" told the process server that "Invata's 'main office' was now in California." *Id.* at 3; *see also* DI 6, 7 (affidavits of non-service filed by Raymond). This led Raymond to add Invata as a defendant to its currently pending lawsuit against Taylor Farms in California state court. *See* DI 16 at 3. And in Raymond's view, coordination between its California state court case and the present case becomes easier if we transfer the action to California federal court. *See id.* at 7.

Invata opposes transfer. *See generally* DI 21. Chiefly, Invata says it is "puzzl[ed]" by Raymond's failure to address the forum-selection clause in the subcontract it agreed to, which "provides that the exclusive jurisdiction and venue for any disputes are the Court of Common Pleas of Montgomery County and" the Eastern District of Pennsylvania. *Id.* at 4, 7. Because Raymond glosses over the clause and does not question its validity, Invata argues Pennsylvania is the proper venue.

Invata also questions whether Raymond has shown a sufficient change in circumstances warranting transfer from Pennsylvania — the agreed venue. *See id.* at 8-9 (quoting *Berger*, 343 F. Supp. at 756) ("[T]here is some question as to whether a plaintiff who voluntarily chooses his forum may move for a change of venue under § 1404. A plaintiff has been allowed to change his forum where he later discovers good reasons for a transfer."). According to Invata, Raymond's problems with service are cloaked in "multiple layers of hearsay" that cannot serve as a basis to change locations. *Id.* at 9. Further, Invata argues that most of the private and public factors that

---

343 F. Supp. 755, 756 (E.D. Pa. 1971) (citation omitted) ("There is some question as to whether a plaintiff who voluntarily chooses his forum may move for a change of venue under § 1404. A plaintiff has been allowed to change his forum *where he later discovers good reasons for a transfer.*" (emphasis added)), *aff'd*, 474 F.2d 1339 (3d Cir. 1973); *Andrews v. Encompass Home & Auto Ins. Co.*, 2015 WL 3631749, at *1 (E.D. Pa. June 11, 2015).

the Third Circuit uses to decide whether to transfer a case weigh in its favor.  *See id.* at 9-12

(referencing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995)).

Raymond reiterates on reply that most private and public factors weigh in favor of

transferring its case.  *See generally* DI 22.  Raymond's response to Invata's argument regarding

the forum-selection clause is that it "is not dispositive."  *Id.* at 2.

We have subject-matter jurisdiction over the action.  *See* 28 U.S.C. § 1332(a)(1).[7]

Raymond's motion to transfer is ripe for adjudication.  For the reasons set forth below, we will

deny Raymond's motion.

III.   **Motion to Transfer Analysis**

Plaintiffs do not typically move to transfer.  *See* 28 U.S.C. § 1404(a) ("For the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought . . . .").  But "there

---

[7] Our conclusion that we have subject-matter jurisdiction is not as straightforward as it seems.  *See Duane B. v. Chester-Upland Sch. Dist.*, 1994 WL 724991, at *1 (E.D. Pa. Dec. 29, 1994) ("Although subject matter jurisdiction has not been challenged in this case, this court does have an affirmative duty to assure itself of jurisdiction before proceeding on a case.").  Raymond alleges that diversity of citizenship exists.  *See* DI 1 ¶ 3 (citing § 1332(a)).  It claims that it is a "New York corporation with its principal place of business in California," and "Invata is a Pennsylvania corporation with its principal place of business in Pennsylvania."  *See id.*; *see also* DI 2 (Raymond's disclosure statement under Federal Rule of Civil Procedure 7.1).

But when Invata filed its disclosure statement in accordance with Federal Rule of Civil Procedure 7.1, it said that Raymond "incorrectly identified" it as a corporation in its complaint — not a limited liability company.  DI 17.  We issued an order to assure ourselves of jurisdiction given the suggested change in corporate structure.  *See* DI 18.  Invata again said the correct defendant in this case is an LLC.  Because analyzing citizenship for a corporation differs from an LLC, we asked both parties to clarify who the correct defendant is.  *See* DI 24.

In response, the parties jointly confirmed that "Invata *LLC* f/k/a/ Invata, Inc. d/b/a Invata Intralogistics" is the correct party.  DI 25 (emphasis added).  Invata LLC's members are citizens of Pennsylvania and Massachusetts.  *See* DI 19 (stating Invata Holdings, Inc. and Ayman Labib are non-LLC members of Invata LLC); *see also Voorhees v. Tolia*, 761 F. App'x 88, 91 (3d Cir. 2019) ("[L]imited liabilities companies . . . are deemed citizens of every state of which one of their members is a citizen.").

Therefore, diversity of citizenship exists.

is no obstacle to a [m]otion to [t]ransfer under 1404(a) being made by plaintiff." *Jones v. Valley Welding Supply Co.*, 303 F. Supp. 9, 10 (W.D. Pa. 1969); *see also Andrews*, 2015 WL 3631749, at *1 (citing *Jones*, 303 F. Supp. at 10).

"The burden of establishing the need for transfer . . . rests with the movant." *Jumara*, 55 F.3d at 879 (citations omitted); *see Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, 575 F. Supp. 3d 532, 538 (E.D. Pa. 2021). A movant may "support their motion . . . with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973); *see also Fellner ex rel. Estate of Fellner v. Phila. Toboggan Coasters, Inc.*, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005) ("Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties.").

Regardless of who moves, analysis of a § 1404(a) transfer motion is two-fold. First, we must confirm that both the original venue and the requested venue are proper. *Jumara*, 55 F.3d at 878-79 (citations omitted). In cases based on diversity jurisdiction, venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

Here, venue is proper in both the original and requested fora.  Invata resides in Conshohocken, Pennsylvania, and the events leading up to this lawsuit happened in Salinas, California.  *See* § 1391(b)(1)-(2).  Invata does not dispute that the Eastern District of Pennsylvania and the Northern District of California are both proper.

We next move to the second step of the analysis, which requires us to use a balancing test to decide whether the "interests of justice [would] be better served by a transfer to a different forum."  *Jumara*, 55 F.3d at 879.  The balancing test effectuates the purpose of § 1404(a) transfers: "prevent[ing] the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Id.*

We conclude that Raymond has not carried its burden to establish that the interests of justice would be better served by transferring the case to the Northern District of California.  As an initial matter, the Third Circuit has not limited itself to only the three factors set forth in §1404(a) — i.e., "convenience of the parties, convenience of witnesses, or interests of justice" — in considering whether to transfer venue.  *Jumara*, 55 F.3d at 879.  The Third Circuit considers the following private interests:

> (1) plaintiff's forum preference as manifested in the original choice;
> (2) the defendant's preference;
> (3) whether the claim arose elsewhere;
> (4) the convenience of the parties as indicated by their relative physical and financial condition;
> (5) the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
> (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum),

and the following public interests:

> (1) the enforceability of the judgment;
> (2) practical considerations that could make the trial easy, expeditious, or inexpensive;

(3) the relative administrative difficulty in the two fora resulting from court congestion;
(4) the local interest in deciding controversies at home,
(5) the public policies of the fora; and
(6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted).

But the Supreme Court has said "[t]he weighing of private and public interests under § 1404(a) changes . . . if a forum-selection clause enters the picture." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d. Cir 2017) (citing *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013)). In *Atlantic Marine*, the Supreme Court stated that a "usual § 1404(a) analysis" changes "in three ways" in the presence of a valid forum-selection clause.

> *First*, the plaintiff's choice of forum merits no weight. . . .
>
> *Second*, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. . . .
>
> *Third*, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules — a factor that in some circumstances may affect public-interest considerations.

*Atl. Marine*, 571 U.S. at 63-64. And "[i]n all but the most exceptional cases," a forum-selection clause should "be 'given controlling weight.'" *Id.* at 60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

Here, Raymond does not argue that the forum-selection clause at issue is invalid, nor does Raymond mention the clause in its motion to transfer.[8]  So, assuming the clause is valid, we must consider *Atlantic Marine*'s three modifications of the § 1404(a) balancing test.

The first *Atlantic Marine* change — affording "no weight" to a plaintiff's choice of forum — is not that useful here.  *Atlantic Marine* dealt with the more common transfer scenario — where a plaintiff disregarded a forum-selection clause and sued in a different forum, leading the defendant to enforce the agreement and move to transfer.  *See id.* at 53, 63.  With roles and movants reversed, we do not think this factor means all that much.

The second *Atlantic Marine* change is important.  Because the forum-selection clause is presumptively valid, we "must consider only the public interest factors and deem the private interest factors to 'weigh entirely in favor of the preselected forum.'"  *Bensalem Lodging*, 575 F. Supp. 3d at 540 (quoting *Atl. Marine*, 571 U.S. at 64).  Therefore, the private factors all weigh in favor of keeping Raymond's case here, and we will consider only the public ones.

The third *Atlantic Marine* change is inapposite.  Technically, Raymond did not "flout" its contractual obligations by suing Invata in the Eastern District of Pennsylvania.  Though Raymond may have initially ignored the forum-selection clause by suing Invata in California, *see* DI 16 at 2, we are not presented with the same situation.

After counting the private factors in Invata's favor, we must decide whether the Third Circuit's public interest factors "overwhelmingly" weigh in favor of Raymond.  *Atl. Marine*, 571 U.S. at 67.  Raymond appears to advance only two factors in support of its motion: factor two

---

[8] The most Raymond says is that the "choice of forum clause in the parties' agreement . . . is not dispositive" of whether to transfer its case, which does not question the clause's validity.  DI 22 at 2.

(practical considerations), and factor four (the local interest in the case).[9]  In doing so, we are

mindful that the public interest factors "will rarely defeat and transfer motion," and, "the

practical result is that forum-selection clauses should control except in unusual cases."  *Atl.*

*Marine*, 571 U.S. at 64.

Generally, practical considerations measure "the ease, expediency, and expense of

adjudicating the claims in the different venues."  *Nat'l Asset Mgmt. v. Coleman*, 2010 WL

3338343, at *5 (W.D. Pa. Aug. 23, 2010).  Raymond thinks transfer would allow for easy

coordination between this case and its other pending lawsuit in California state court.  *See* DI 16

at 7.  It argues that "discovery — particularly the depositions of witnesses — could best be

coordinated between the two actions if the District Court case were pending in the same

geographic area, where witnesses are located."  *Id.*  Invata, on the other hand, argues that this

case involves witnesses from both Pennsylvania and California, and hearing the case in either

forum will require witnesses to travel.  DI 21 at 11.

For three reasons, we are not convinced that litigating in California makes so much

practical sense that it overrides the parties' forum-selection clause.  First, Raymond — the party

with the burden of establishing that transfer is warranted — fails to support its practicality

argument with any "documents, affidavits, or statements concerning the availability of

materiality witnesses" or "relative ease of access to evidence."  *Aouad v. Machado*, 2023 WL

---

[9] In its reply brief, Raymond overlaps its argument regarding California's interest with
public interest factor five — the public policies of the fora.  *See* DI 22 at 4 ("California manifests
a strong public policy interest in deciding local matters locally.").  Even if we consider this factor
separately, it tilts equally in Invata's direction, as "Pennsylvania courts have an equal interest in
deciding a controversy involving an agreement ostensibly governed by Pennsylvania law, and
entered into by a business that had its principal place of business in Pennsylvania at the time of
execution and continues to maintain a significant presence in" Pennsylvania.  *Maaco*
*Franchising, Inc. v. Tainter*, 2013 WL 2475566, at *6 (E.D. Pa. June 10, 2013).

5339615, at *2 & n.2 (E.D. Pa. Aug. 18, 2023) (quoting *Fellner*, 2005 WL 2660351, at *4).

Raymond may accurately claim that its case "has everything to do with Salinas, [California] and

nothing to do with Pennsylvania," and that "coordinat[ion]" of discovery and witnesses is much

easier with two cases in the same neck of the woods. DI 16 at 7.  But Raymond's argument lacks

the evidentiary backing necessary to carry its burden.[10]  Therefore, the practical considerations

do not overshadow the forum-selection clause.

Second, Raymond's "related case pending in California" is a state court case — not

federal.  True, "[t]he presence of a related case in the transferee forum is a strong factor favoring

transfer." *Schlenker v. Immucor, Inc.*, 2009 WL 5033972, at *5 (E.D. Pa. Dec. 22, 2009).  The

problem for Raymond is that its proposed transferee forum is not California state court; it is the

Northern District of California.  Raymond's life may become easier by having witnesses and

deponents in the same geographic proximity for both cases to coordinate depositions.  But the

degree of that coordination and the potential efficiencies are at least speculative if not dubious.

Nor does the local interest California may have in hearing the case make a material

difference.  Raymond argues that this factor weighs heavily in favor of transfer because "Invata

purposefully entered into a subcontract for goods and services to be delivered in California, and

Pennsylvania has nothing to do with the controversy."  DI 16 at 8.  But as Raymond has pled and

stipulated to, Invata resides in Pennsylvania.  *See* DI 1 ¶ 2; DI 25.  Thus, the movant's and non-

movant's forum "each have an interest in deciding a case involving its residents."  *Kilduff v.*

---

[10] And, in the era of remote work, factors such as witnesses' physical locations are much less of an issue.  *See Coleman*, 2010 WL 3338343, at *4 n.2; *see also James-Velardo v. United States*, 2017 WL 2972690, at *2 (E.D. Pa. July 12, 2017).  Thus, whatever evidence Raymond might have had available would have had to be a remarkable variation from the norm.

*Jayco, Inc.*, 2023 WL 3361187, at *5 (E.D. Pa. May 10, 2023).  Therefore, the local interest factor is — at best — neutral.

Still, Raymond throws a Hail Mary that we must address: its argument that it "later discover[ed] good reasons for a transfer."  DI 16 at 4 (quoting *Berger*, 343 F. Supp. at 756).  Raymond says it discovered that Invata's "main office" is now in California when "its process server was informed by an Invata representative" that "no manager was present in" its Pennsylvania office, and the Pennsylvania office "appeared to be largely unstaffed."  DI 16 at 3; *see also* DI 7.  Invata dismisses Raymond's contention as "multiple layers of hearsay" and insists that Raymond plainly fails to meet its "burden to change the forum."  DI 21 at 9.

We agree with Invata for two reasons.  First, in confirming that we have subject-matter jurisdiction, Raymond stipulated to the fact that Invata LLC — the entity being sued — has a member with a principal place of business in Pennsylvania.  DI 25.  Stipulating that the correct Invata entity resides in Pennsylvania undercuts Raymond's own argument.

Second, as noted above, Raymond relies on inference, if not speculation, to support its argument regarding Invata's "main office" that is directly contradicted by Invata.  Raymond has not submitted anything outside of a process server's affidavit to support the proposition that Invata's presence in Pennsylvania has dramatically changed.  The affidavit is not enough to negate the parties' forum-selection clause.

For these reasons, we deny Raymond's motion to transfer.

IV.     **Invata's Motion to Dismiss**

Now that we know Raymond's case is staying with us, we assess the plausibility of its complaint.  Raymond sues Invata for breaching the subcontract, negligence, and breaching an implied warranty and covenant.  *See* DI 1 at 6-12.  Basically, Invata allegedly violated the terms

of the subcontract through its regular delays and by failing to install FastTrak and other parts of the agreement. *See, e.g.*, *id.* ¶¶ 24, 28-29, 32.

Invata moves to dismiss Raymond's complaint. *See generally* DI 10-2. Invata's main argument is that all of Raymond's claims are time-barred by the subcontract's express and agreed one-year limitation period. *See id.* at 7-8 (citing 13 Pa. Cons. Stat. § 2725). Invata explains that we can use two possible dates to confirm that Raymond's causes of action arose more than one year before it filed its complaint on January 12, 2023. *See id.* at 8. First, Invata says that Raymond's own allegations include evidence of a time-barred complaint. If, as Raymond alleges, Taylor Farms terminated its agreement with Raymond on October 3, 2019 — and termination was "because of Invata's repeated delays" — then "Raymond's cause of action accrued on or before October 3, 2019." *Id.* at 8 (quoting DI 1 ¶ 15). Second, Invata says that Raymond's cause of action had to have arisen before November 29, 2021 — the date that Raymond initially sued in California state court. *Id.* at 8-9.

Invata also argues that Pennsylvania's "gist of the action" doctrine bars Raymond's tort claims. *See id.* at 9-11. Alternatively, Invata argues that, if the one-year limitation and gist of the action doctrine do not apply to Raymond's tort claims, they are barred by Pennsylvania's general two-year statute of limitations for tort claims. *See id.* at 12-13 (citing 42 Pa. Cons. Stat. § 5524). Lastly, Invata argues that its contract with Raymond expressly disclaims implied warranties, thus, Count V of Raymond's complaint fails. *See id.* at 13-14.

Raymond responds that a different provision of the subcontract contradicts the one-year limitations period Invata cites. *See generally* DI 15. As a result, the limitations period does not affect its claims, and they fall within Pennsylvania's four-year statute of limitations for breach-of-contract claims. *See id.* at 4. Specifically, Raymond cites to a provision that would have

required it give Invata "notice of [its] claim 'within one (1) year *from date of acceptance*'" and commence an action "not later than forty-five (45) days" post-notice. *Id.* at 3 (emphasis added); *see* DI 10 Ex. B ¶¶20-22.[11]   In Raymond's view, there is no "instance of 'acceptance' because none ever occurred." *Id.* at 3.   And absent acceptance, the limitations period in paragraph 22 never started. *Id.*   Moreover, Raymond argues that Invata is continuously breaching the subcontract "through the present date." *Id.* at 4 (quoting DI 1 ¶ 21).

Raymond partially confronts the gist of the action doctrine.   Raymond insists that its negligent misrepresentation claim is not barred because it is "based on" omissions and statements "made solely to induce" Raymond to continue doing business with Invata. *Id.* at 5.   It also argues that its negligent misrepresentation claim is not barred by the applicable statute of limitations because "the true facts" about Invata's conduct "were not known to it at the time." *Id.* at 6.

In reply, Invata disagrees with Raymond's assertion that the terms of the subcontract are contradictory. *See generally* DI 20.   Invata argues that, if Raymond stretches to argue that it never accepted the terms of the subcontract, then the "contradictory provisions" it cites do not apply. *Id.* at 3.   Instead, Invata submits that the "general" one-year limitation applies. *Id.*   Invata further argues that Raymond's "continuous breach" theory is routinely rejected under Pennsylvania law. *See id.* at 3-4.

We agree that Raymond's contract claims are barred by the one-year limitation period, and its tort claims are barred under the gist of the action doctrine.   Therefore, we grant Invata's motion.

---

[11] As Invata explains in its reply, Raymond cites language from paragraphs 20-22 of the subcontract, but refers to paragraph 12 in its opposition. *See* DI 20 at 2 n.2.

## V.   <u>Motion to Dismiss Analysis</u>[12]

### A.  Raymond's contract claims are barred by the subcontract's one-year limitations period.

Under Pennsylvania law, the "[g]eneral rule" is that "[a]ny action" based on "contracts

for sale"[13] have a four-year statute of limitations.  42 Pa. Cons. Stat. § 5525(a)(2) (citing 13 Pa.

---

[12] Reviewing Invata's motion is a three-step process under Third Circuit precedent. "First, [we] 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (second and third alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  "[S]econd, we . . . identify allegations that are conclusory and therefore not assumed to be true." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 326 (3d Cir. 2019).  Third, we "evaluate[] the plausibility of the remaining allegations" by "assuming their veracity" and "construing them in the light most favorable to the plaintiff." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).  At bottom, deciding whether a complaint is facially plausible is "context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64.

Relevant here, the Third Circuit "permit[s] a limitations defense to be raised by a motion under Rule 12(b)(6) 'only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2022)).  We may use "only . . . the documents properly considered at the motion to dismiss stage" in deciding whether an action is barred, such as "matters of public record" or documents "integral to the complaint." *Id.*

Lastly, the parties agree — as their subcontract specifies — that Pennsylvania law applies to the claims at issue.  *See* DI 10 Ex. A at 6.

[13] "'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time." 13 Pa. Cons. Stat. § 2106(a).  And "goods" are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action." *Id.* § 2105; *see also Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 675 (3d Cir. 1991) ("The Pennsylvania courts have recognized that '"goods" has a very extensive meaning' under the U.C.C." (quoting *Duffee v. Judson*, 380 A.2d 843, 846 (Pa. Super. Ct. 1977))).

Neither party says whether the subcontract at issue is a contract for goods, services, or both, so we simply take up the issues as they were presented to us.  *But see Advent Sys.*, 925 F.2d at 676 ("[S]oftware is a 'good' within the definition in the [Pennsylvania U.C.C.]."); *Univ. Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, 2018 WL 1757727, at *5 (E.D. Pa. Apr. 12, 2018) (stating that "the Third Circuit has held that the predominate purpose of a contract for the purchase of software is generally one for goods," but concluding an agreement "for a mix of products (the hardware and software) and services (design, support, and integration)" had a "plausible . . . predominant purpose . . . for services").

Cons. Stat. § 2725); *see also Allstate Prop. & Cas. Ins. Co. v. Haier US Appliance Sols., Inc.*, 2022 WL 906049, at *11 (M.D. Pa. Mar. 28, 2022) (applying § 2725 to breach of warranty claim); *see Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 883 (Pa. 2007) (noting Pennsylvania law considers a breach of "the duty of good faith and fair dealing . . . as a breach of contract action"). The four-year clock starts "when the breach [of contract] occurs." § 2725(b). But "parties *may* reduce the period of limitation" in their contract "to not less than one year." *Id.* § 2725(a) (emphasis added).

Here, Raymond brings three contract claims that are barred by the one-year limitations period. Paragraph 5 of the subcontract states that "[a]ny action brought by [Raymond] must be brought within one (1) year after the cause of action arose." DI 10 Ex. A at 6. Thus, the "reduction" exception under § 2725(a) applies to Raymond's contract claims.

And even drawing all inferences in Raymond's favor, the breach that Raymond alleges must have occurred more than one year prior to the time it filed its complaint in January 2023. Most simply, Raymond sued Invata in California state court on November 29, 2021 for breaching the subcontract. *See* DI 10 Ex. B.[14] It follows that the alleged breach of the same subcontract based on the same set of facts occurred *before* November 2021 — more than one year prior to January 2023.

Filing the 2021 California lawsuit also discredits Raymond's argument regarding "ongoing breaches." DI 15 at 4. Indeed, under Pennsylvania law, "the statute of limitations does not run against a contractual cause of action which is a continuing one"; "the statute of limitations begins to run only from the time *when the breach occurs or the contract is in some way terminated." Jodek Charitable Tr., R.A. v. Vertical Net Inc.*, 412 F. Supp. 2d 469, 475 (E.D.

---

[14] *See supra* n.3 (taking judicial notice of state court filing attached to Invata's motion).

Pa. 2006) (emphasis added) (quoting *Thorpe v. Schoenbrun*, 195 A.2d 870, 872 (Pa. Super. Ct. 1963)).  But because the breach must have happened pre-November 2021, or the contract must have been terminated before November 2021, Raymond's claim is barred even if something about the subcontract is considered "continuous."

Raymond's last argument against application of the limitations period is similarly unavailing.  If Raymond never accepted the terms of the subcontract, the contractual provisions that it argues *should* apply, would not.  *See* DI 20 at 3-4 (describing the actions Raymond must take before suing Invata for breach of contract).[15]  Therefore, the counts of Raymond's complaint sounding in contract (breach of contract, breach of implied covenant of good faith and fair dealing, and breach of implied warranty) are time-barred.

### B.  Raymond's negligent misrepresentation claim is barred by the gist of the action doctrine because it is predicated on contractual performance.

The gist of the action doctrine prevents plaintiffs from "merely labeling . . . a claim as being in tort . . . [i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract."  *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). Tort claims are barred by the gist of the action doctrine in four instances:

(1)  where the tort claim "aris[es] solely from a contract between the parties";

(2)  where "the duties allegedly breached were created and grounded in the contract itself";

(3)  where "the liability stems from a contract"; or

(4)  where the tort claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."

---

[15] And Raymond's argument that it never accepted the agreement is unsustainable because a "plaintiff must allege 'basic elements' of a contract, including 'an offer, *acceptance*, and consideration,'" to state a breach-of-contract claim.  *Smith v. Pruco Life Ins. Co.*, 2021 WL 63266, at *2 (emphasis added) (quoting *Koken v. Steinberg*, 825 A.2d 723, 729 (Pa. Commw. Ct. 2003)).

*Battle Born Munitions Inc. v. Dicks Sporting Goods Inc.*, 2023 WL 4758449, at *4 (3d Cir. July 26, 2023) (alteration in original) (quoting *Bruno*, 106 A.3d at 67). "District courts in Pennsylvania have noted that caution should be exercised in determining the 'gist of an action' at the motion to dismiss stage." *Odgers v. Progressive N. Ins. Co.*, 112 F. Supp. 3d 286, 292 (M.D. Pa. 2015 (collecting cases).

Negligent misrepresentation claims are barred under the gist of the action doctrine where the misrepresentation "allegedly made relate[s]" only to a party's "ability to perform under the terms of the [a]greement." *Munksjö Paper AB v. Bedford Materials Co., Inc.*, 2018 WL 1866086, at *6 (W.D. Pa. Apr. 18, 2018); *see Ohama v. Markowitz*, 434 F. Supp. 3d 303, 320 (E.D. Pa. 2020) (applying gist of the action doctrine to negligent misrepresentation claim because "[t]he obligations that [p]laintiff now complains [d]efendant has not fulfilled arise *directly* from the" parties' agreement).

Here, Raymond's negligent misrepresentation claim — and Invata's purported liability — stems from the subcontract. The "misrepresentations" that Raymond alleges relate to Invata's "perform[ance] . . . design[], manufacture[], and construct[ion]" under the terms of the subcontract. DI ¶ 32. In relying on these supposed misrepresentations, the harm Raymond claims it suffered is "paying [Invata] for their work and retaining Invata for further work." *Id.* ¶ 33. Thus, the obligations and harm relate solely to performance under the terms of the subcontract, and the gist of the action doctrine bars Raymond's negligent misrepresentation claim.[16]

---

[16] Raymond appears to concede that its negligence claim is barred by the gist of the action doctrine. *Cf.* DI 15 at 4-6. Regardless, we conclude that Raymond's negligence claim is barred for the same reasons as its negligent misrepresentation claim.

**VI.**   **Conclusion**

We conclude as follows:

- Raymond's motion to transfer is denied.

- We grant Invata's motion to dismiss Counts I, II, and V of Raymond's complaint *with prejudice* because they are barred under the one-year limitations provision of the parties' subcontract.

- We grant Invata's motion to dismiss Counts III and IV of Raymond's complaint *with prejudice* under the gist of the action doctrine.